**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24 B 604 |
| BRIAN BELEN, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| | ) | |
| ELISE HOLOWICKI, | ) | |
| | ) | Adv. No. 24 A 168 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| BRIAN BELEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on the complaint filed by Plaintiff Elise Holowicki

("Plaintiff")[1] against Defendant Brian Belen ("Defendant") seeking a finding that a $165,304.50

judgment owed to Plaintiff by Defendant is non-dischargeable under 11 U.S.C. § 523(a)(6)

("Complaint").[2]  The court held a trial at which both parties testified.  Having heard the

testimony of the witnesses, reviewed the exhibits, and read the papers and briefs submitted by

the parties, the court will enter judgment in favor of the Defendant.

**I.      JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district

court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §

---

[1] Ms. Holowicki filed the complaint in this adversary proceeding *pro se*, but later retained counsel.

[2] The Complaint also seeks attorneys' fees for Plaintiff's future collection actions against the Defendant following a finding of non-dischargeability.

157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

**II.    FINDINGS OF FACT[3]**

**A.    The Parties vacation in Croatia, rent a moped, and crash.**

The parties were dating each other and travelled to Croatia from Chicago between August 26, 2021 and September 11, 2021.  (Joint Pretrial Statement ("JPS") Ex A, Statement of Uncontested Material Facts ("SUMF") ¶¶ 1, 2.)  The parties travelled to the island of Viz and rented a moped on August 29, 2021.  (SUMF, ¶¶ 3, 4.)  Defendant was the only driver of the moped, and this was his first time driving one.  (SUMF, ¶¶ 5, 6.)  Defendant testified he had driven a motorcycle for a short time some years ago.  There was conflicting testimony over operating instructions and training and whether Defendant was offered but refused training at the moped rental facility.  Defendant received no formal moped training prior to departing the moped rental facility.  Defendant testified he did have a driver's license at the time of the accident and that the vendor showed him "how to start up the vehicle, and then I took practice laps." (Tr. 30:11-14.)[4]  Plaintiff confirmed that Defendant "started doing some practice laps (Tr. 85:13-14), returning between 5 and 15 minutes later (Tr. 85:17, 88:21-22).  Plaintiff testified she travelled on the rear of the moped, sitting directly behind the Defendant with her arms around him or on the moped frame to his side.  (Tr. 96:25-97:23.)  The parties travelled on the moped three times that day prior to the accident.  (SUMF ¶¶ 7-9.)  They encountered roads with inclines, declines and mountainous terrain.  None of the prior trips resulted in an accident or injury.  (Tr. 88:16-90:5, 93:4-11.)

---

[3] To the extent any findings of fact are deemed to be conclusions of law, then such findings of fact are adopted as conclusions of law. To the extent any conclusions of law are deemed to be findings of fact, then such conclusions of law are adopted as findings of fact.

[4] "Tr." shall refer to the transcript of the trial held on April 29, 2025, which is found at docket #41.

On their fourth moped trip, the parties were driving to a beach when the crash at issue in this proceeding took place ("Crash").  (SUMF ¶¶ 10, 13.)  Prior to the Crash, Plaintiff testified she repeatedly told Defendant to slow down or otherwise expressed concern about the safety of Defendant's driving.  The Crash occurred at a "T" intersection when the Defendant attempted a left turn.  Each party described the turn itself a bit differently.  Both parties, however, testified that upon driving to the intersection, after encountering oncoming traffic, Defendant began to make the turn, lost control, and crashed the moped into a marker on the side of the road.  Both parties were injured in the Crash.  (SUMF ¶ 13.)

**B.      Plaintiff's Injuries and Subsequent Lawsuit.**

Plaintiff testified that the Crash caused various injuries including to her neck, but most substantially an injury to her ankle which needed surgery.  Both parties testified that following the injury, Defendant agreed to pay for Plaintiff's medical bills, although he appears to have paid nearly none of them.  Plaintiff then filed a personal injury lawsuit in Cook County ("State Court Action"), resulting in a judgment against Defendant for $165,304.50 related to the Crash.  (SUMF ¶¶ 14-16.)  The State Court Action was based on a theory of negligence and not willful or malicious conduct.  (Plaintiff's Ex. 25.)  Plaintiff filed a valid claim in Defendant's bankruptcy case and then filed the present adversary proceeding seeking a finding of non-dischargeability under 11 U.S.C. § 523(a)(6).

### III.    CONCLUSIONS OF LAW

**A. Standard for exceptions to discharge.**

Plaintiff must prove by a preponderance of the evidence that her debt should be excepted from Defendant's discharge.  *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).  Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors.  *See In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992).

**B. Requirements of non-dischargeability under section 523(a)(6)**

Section 523(a)(6) of the Bankruptcy Code bars debtors from discharging debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).   The Plaintiff must prove, by a preponderance of the evidence, that the Defendant (1) caused an injury, and that the Defendant acted (2) willfully and (3) maliciously. *Silver-Hacker v. Allen* (*In re Allen*), 653 B.R. 895, 902 (Bankr. N.D. Ill. 2023); *R & J Constr. Supply Co., Inc v. Juma* (*In re Juma*), 542 B.R. 237, 244 (N.D. Ill. 2015).

The parties agree Defendant's actions injured Plaintiff.  (*See* SUMF ¶ 13; JPS, Statement of Agreed Material Issues of Law, ¶ 1.)  The remaining question is whether Defendant acted willfully *and* maliciously.  In order to prevail, Plaintiff must establish both.  *See Merritt v. Rizzo* (*In re Rizzo*), 337 B.R. 180, 188 (Bankr. N.D. Ill. 2006).  "Willfulness can be found either if [Defendant's] motive was to inflict injury, or [Defendant's] act was *substantially certain* to result in injury." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (internal quotations omitted) (emphasis added).  Willfulness requires deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  *Id.*

Malice "requires that [Defendant] acted in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* (internal

quotation omitted).  "[D]ebts arising from recklessly or negligently inflicted injuries do not fall

with the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

### C. Although injured in the Crash, Plaintiff did not establish by a preponderance of the evidence that the debt is nondischargeable pursuant to section 523(a)(6)

#### 1.    Willful.

Willfulness is analyzed by an objective standard.  *See Gerard v. Gerard*, 780 F.3d 806,

811 (7th Cir. 2015).  At trial, Plaintiffs brought out a number of facts concerning Defendant's

driving, in an attempt to show that Defendant's actions were substantially certain to cause the

Crash and that the actions were in conscious disregard to Defendant's duties to Plaintiff.  The

facts brought out at trial include: (1) Defendant has a history of becoming emotional in

unfamiliar settings; (2) Defendant refused to receive any moped training;[5] (3) Defendant had

never driven a moped before and had not driven a two-wheel vehicle in over a decade prior to the

Crash; (4) Defendant admitted that driving a moped is very different than driving a car; (5)

Defendant was in a foreign country driving on twisting roads; (6) Plaintiff repeatedly told

Defendant he was operating the moped unsafely and driving too fast, speeding and swerving, but

he did not slow down, ignored her concerns and berated her for raising the concerns;[6] and (7)

Defendant pushed the moped onto Plaintiff when getting up after the Crash.

As to the allegations concerning Defendant's emotional driving history, Plaintiff failed to

show Defendant has any exceptional history of emotional outbursts or frustration when driving

in new situations.  The evidence of this fact was Plaintiff's testimony regarding a previous trip

they took to New York City.  While driving, Defendant missed an exit on a New York City

---

[5] Plaintiff also had no moped training.  Neither party offered evidence as to the legal requirements for driving a moped in Croatia.

[6] Plaintiff's determination that Defendant was driving too fast was based on the flow of traffic around them.  The legal speed limit is unknown.

highway.  After missing his exit, Defendant yelled and, at least once, shouted or screamed an expletive.  Immediately before and after the Crash, Defendant was shouting expletives.

Yelling and swearing after missing an exit or when one is about to crash are not normal characteristics of a routine and uneventful driving experience.  However, they are also not necessarily abnormal and do not make an accident 'substantially certain' on their own.  Even when taken together with other factors they barely, if at all, increase the possibility of a crash with certainty, let alone substantial certainty.

When weighing the other alleged indicia of the Defendant's intent, it is also useful to look at the events of the Crash itself.  Defendant testified that he stopped at the intersection, began turning onto the other road, then lost control after being startled by unexpectedly fast oncoming traffic, accidently accelerating, and taking the turn too wide.  Plaintiff's testimony places Defendant going 30 mph into the turn, she was yelling to slow down, he was yelling, and then they crashed because he lost control due to his poor driving and taking the turn too wide (not caused by oncoming traffic).  However, on cross examination, Plaintiff testified Defendant did allow a car to pass before turning, though she testified she did not recall "it being a completely complete stop."  Both parties testified that Defendant (at least) slowed to make the turn, then lost control and hit a marker on the side of the road due to accelerating too quickly or at the wrong moment.

These facts, taken together, suggest that Defendant may have been negligent and possibly even reckless, but under § 523(a)(6) Plaintiff must prove that the actions were "substantially certain" to have caused an injury in order to be willful.  Here, they were not.

The statute itself requires the conduct to be willful, which typically requires intent.  *See Skaarer v. Fercho* (*In re Fercho*), 39 B.R. 764, (Bankr. D.N.D. 1984).  The language that the

consequences of a debtor's actions can be instead 'substantially certain' comes from the

Restatement (Second) of Torts § 8(a), comment (b).  *Id.*; *Bukowski v. Patel*, 266 B.R. 838, 844

(E.D. Wis. 2001).  The Restatement provides additional context: "[a]s the probability that the

consequences will follow decreases, and becomes less than substantial certainty, the actor's

conduct loses the character of intent, and becomes mere recklessness." Restatement (Second) of

Torts § 8(a), comment (b).[7] Evidence that the probability of injury from Defendant's actions was

not substantially certain is shown by the fact that the parties took three moped trips on the island

before their fourth tragic trip.  If crashing was truly substantially certain, then why did it not

happen on the earlier trips?  Similarly, why would Plaintiff continue riding the moped if

Defendant was sure to crash?[8]  Plaintiff's explanations were not credible.  Likewise, if

Defendant intended to cause a crash substantially certain to cause injury, why would he do so

knowing that they were coupled together sitting on the moped and consequently putting himself

in harm's way?  If truly faced with the substantial certainty of injury, Plaintiff could have elected

to travel by foot or bus even if she chose not to pay for Uber, taxi or remain at the residence.

Regardless, justifying as to why Plaintiff continued to tour with Defendant on a moped does not

satisfy her burden of proof to establish willful conduct.

Defendant cites a case with similar facts – *Draka v. Andrea* (*In re Andrea*), No. 18-A-

96014, 2019 WL 3713692 (Bankr. N.D. Ill. Aug. 6, 2019).  In *Andrea*, a person driving a

motorcycle with no motorcycle license, lapsed insurance, and no official training (albeit with

---

[7] To illustrate just how high of a bar is "substantially certain," the Eighth Circuit Court of Appeals stated in *dicta*:

> A person who deliberately and intentionally turns the wheel of an automobile to make a left-hand
> turn without looking up to see if traffic is coming the other way, an act very likely to lead to
> injury, however foolish or even reckless he or she may be, simply cannot fairly be described as
> committing an intentional tort.

*In re Geiger*, 113 F.3d 848, 852 (8th Cir. 1997), *aff'd sub nom. Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[8] While island travel options were limited, one of the pre-Crash trips was back to the residence the parties rented.

alleged 50,000 miles of experience) hit the plaintiff while attempting to pass him and take the

"lead" in a group ride, causing him to crash. *Id.* at *2, 3. That court found the actions were not

substantially certain to cause the plaintiff's injuries. *Id.* at *5.

Plaintiff's counsel attempts to differentiate *Andrea* by noting the parties in that case were

noted as 'amiable.' In this case Plaintiff noted that while the parties were in a relationship at the

time of the Crash, they experienced some relationship trouble prior to leaving for Croatia.

Additionally, because Plaintiff voiced her concerns about Defendant's driving, Defendant had

been yelling at Plaintiff. While Plaintiff's testimony suggests a poor and deteriorating

relationship between the parties, it fails to rise to a level of animosity between them that would

suggest Defendant was motivated to injure Plaintiff (and potentially himself). There are no

physical threats or similar motivations to suggest Defendant had the motive to injure Plaintiff

(and himself, as they were sitting together on the same moped). Plaintiff's attempt to distinguish

*Andrea* does not support her efforts to meet her burden of proof that it was substantially certain

that Defendant's conduct would result in injury.

Beyond *Andrea*, other courts have made similar findings with similar facts. *See e.g.*

*Schachter v. Fall* (*In re Fall*), 192 B.R. 16 (Bankr. D.N.H. 1995) (finding debt dischargeable

where, prior to crash, debtor drove boat at night, in poor visibility, with his head through the

canvas while driving at some speed, and after having likely drunk alcohol); *Tso v. Nevarez* (*In re

Nevarez*), 415 B.R. 540 (Bankr. D.N.M. 2009) (finding debt dischargeable where, prior to crash,

debtor drove more than 10 mph over the speed limit and ran a red light); *Keeley v. Gumprecht*,

(*In re Gumprecht*), No. 11-A-5909, 2012 WL 3101841 (Bankr. E.D. Mich. July 27, 2012)

(finding debt dischargeable where, prior to crash, debtor approached stop sign at 55 mph, pressed

brakes only 20 yards from stop sign, and without stopping turned into oncoming traffic); *Au v.*

*Johnson* (*In re Johnson*), No. 6-A-105, 2007 WL 1728721 (Bankr. D. Mont. June 13, 2007) (finding debt dischargeable where, prior to crash, debtor disabled his front right brake, was aware of steering problems under heavy braking with only three brakes and had attempted to repair his own steering); *Guthrie v. Kokenge* (*In re Kokenge*), 279 B.R. 541 (Bankr. E.D. Tenn. 2002) (finding debt dischargeable where, prior to crash, debtor was attempting to race a Camaro on a snowy mountain road at over 90 mph with plaintiff in car).

Plaintiff also raises a post-Crash "push" as evidence of willful conduct.  The "push" occurred immediately after the Crash as the Defendant was extricating himself from the moped. Plaintiff testified that immediately after the Crash she fell on the ground.  Defendant then dismounted the moped and, with his hands on the handlebars pushed the vehicle down on top of her.  He then apologized and moved the moped off of her.  But, Plaintiff conceded (and Defendant alleged) that, simply as a consequence of the Crash, the moped may have also been on top of them post-Crash and Defendant was trying to get the moped off himself.  Plaintiff testified Defendant could have instead stayed on the ground with her and remained still while awaiting assistance.  Plaintiff's testimony suggests the "push" could have resulted simply in a transfer of the moped's weight from Defendant's leg onto Plaintiff's leg as he was trying to free himself. Although in an exercise of courtesy Defendant could have remained on the ground with Plaintiff, no evidence supported Defendant's intent to push the vehicle onto the Plaintiff and cause the injury.  Neither did any evidence identify injuries incurred as a result of the "push."  Plaintiff's counsel alleged that the difference in injury is not clear from the state court judgment and, essentially, the injury was all part of the Crash as a whole.

From any perspective, and evaluating all of the evidence, Plaintiff did not meet her burden.  The evidence did not establish Defendant's intent to inflict injury, or conduct substantially certain to result in injury. Defendant's actions were not willful.

### 2.   Malicious.

Plaintiff also contends that Defendant's conduct was malicious.  "The element of malice is satisfied when the debtor acts in conscious disregard of [his] duties or without just cause or excuse, it does not require ill-will." *Salgado v. Lenoci* (*In re Lenoci*), 599 B.R. 599 (Bankr. N.D. Ill. 2019).  Citing her concerns regarding the Defendant's driving habits and voicing those concerns, Plaintiff contends that there is "no doubt that Defendant acted in conscious disregard of [his] duties" to drive the moped safely.  But the testimony suggested otherwise.  Defendant credibly disputed the allegations and characterization of his driving manner and justified accelerated speed at certain times (merging into oncoming traffic already proceeding at a higher rate of speed).  The credibility of Plaintiff's testimony is questionable.  If such malicious conduct was present, why did no incident occur during the previous three trips?  Why did Defendant slow prior to the turn rather than continue at higher speed and create a more impactful Crash?  Why did the Defendant yield to oncoming vehicles and allow them to pass safely and clear the intersection?  (Tr. 123:12-25, 176:19-177:11.)  Instead, Defendant slowed the moped, yielded to oncoming vehicles and accelerated to merge successfully into traffic.  The evidence supports a conclusion that an unfortunate accident occurred – one that was negligent or reckless at best.

### D.  Judicial Estoppel.

Defendant argues that Plaintiff is judicially estopped from arguing willfulness and malice because her State Court Complaint, which led to the default judgment and resulting debt, only alleges negligence.  Judicial estoppel is an affirmative defense.  Fed. R. Bankr. P. 7008(c)(1).

Defendant pleaded two affirmative defenses: (1) failure to state a claim; and (2) improper claim splitting.  (Docket No. 5.)  Improper claim splitting is the improper division of a single legal claim or cause of action into multiple lawsuits.

Defendant cannot judicially estop Plaintiff's claims.  First, Defendant did not plead the defense and, therefore, it may be waived or forfeited.  *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019) ("A defendant's failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it.").

Second, the doctrine of judicial estoppel precludes a party from taking a position in a case that is contrary to a position it has taken in an earlier proceeding.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  At trial and in his post-trial brief, Defendant argues judicial estoppel as a defense.

In order to judicially estop a claim, Defendant must show that "(1) the earlier and the later positions are inconsistent; (2) the party prevailed in the earlier proceeding based on the court's acceptance of the earlier position; and (3) allowing the party to assert an inconsistent position would provide it with an unfair advantage if not estopped." *Curry v. Revolution Lab'ys., LLC*, No. 17 C 2283, 2023 WL 5509337, at 21 (N.D. Ill. Aug. 25, 2023), *aff'd*, 124 F.4th 441 (7th Cir. 2024).  Defendant bears the burden of proof on each element.  Here, Defendant contends that, because Plaintiff obtained a default judgment based on negligence, she should be judicially estopped from pursuing a different level of culpability – willful and malicious.  Plaintiff's section 523 action did not exist when she brought her state court action.  During this case, Plaintiff has undertaken the burden of satisfying a new and more difficult burden to prevail on a different cause of action.  There is no unfairness to Defendant, who initiated his bankruptcy

case in order to obtain the benefit of a discharge, to defend against this new and different cause of action.  It is the Plaintiff who faces an unfair disadvantage of raising and proceeding against anticipatory issues in order to prevent a future bar.  *See Resolution Trust Co. v. McKendry* (*In re McKendry*), 40 F.3d 331, 335 (10th Cir. 1994) ("Forcing a creditor to anticipate a hypothetical bankruptcy filing in his state court action on the debt and therefore to pursue all potential claims relevant to discharge in addition to those necessary to establish the debt would frequently entail needless additional litigation."); *accord Brown v. Felsen*, 442 U.S. 127 (1979) (settled claims do not preclude a future dischargeability claim).  Regardless, the issue is moot as the court finds the debt to be dischargeable.

## IV.  CONCLUSION

Plaintiff sought a finding that the debt owed to her by Defendant cannot be discharged in Defendant's bankruptcy case.  In order to prevail, Plaintiff had to prove by a preponderance of the evidence that Defendant's actions willfully and maliciously injured Plaintiff.  In this case, Plaintiff had to prove that Defendant's actions were intentional or substantially certain to cause Plaintiff's injury and malicious.

Having heard the testimony of the witnesses, reviewed the admitted exhibits and read the papers and briefs submitted by the parties, the court finds that Plaintiff has not met her burden of proof on either element – willful or malicious conduct – required by 11 U.S.C. § 523(a)(6).  Judgment will be entered in favor of Defendant.

ENTERED:

Date: September 9, 2025

_____
DAVID D. CLEARY
United States Bankruptcy Judge

MLU